[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
All three of these cases involve collection matters. TheMcMillian case had a return date of December 6, 1988. A judgment by stipulation was entered on January 31, 1992; a wage execution was authorized by the court on February 23, 1993, and was served on the defendant employer, the City of New Haven, on March 2, 1993. The Tucker case was returned to this court on April 3, 1990, and resulted in a judgment against the defendant on May 14, 1990. Subsequently, a wage execution was authorized by the court on November 28, 1990. This execution was served on the defendant, City of New Haven, on February 17, 1990. The Pomeroy case was returned to this court on September 1, 1992. A judgment was entered against the defendant, Kathleen Pomeroy, on September 11, 1992. A wage execution was authorized by the court on Kathleen Pomeroy on November 12, 1992, and served on the defendant, City of New Haven, on November 20, 1992.
Subsequently, the court received application for turnover orders on all three of these cases. The turnover order in theMcMillian case is dated May 22, 1997; in the Tucker case, May 30, 1997; in the Pomeroy case, October 27, 1997. The turnover orders were directed to the City of New Haven, the employer of all three of the original defendants. The City of New Haven appeared in response to these applications for turnover orders.
On February 20, 1998, the court held a hearing on all three applications for turnover orders. The applications stated that they were brought pursuant to General Statute § 52-356b. Section 52-356b is part of Chapter 906 of the General Statutes, which is entitled "Postjudgment Remedies". The statute authorizes turnover orders in aid of an execution. The same chapter authorizes wage executions, § 52-361a, to enforce payments of a judgment. Section 52-361a(g) imposes certain responsibilities upon employers including the State and any municipality served with a wage execution against an employee.
 "If the employer fails or refuses to pay the earnings levied against the wages of the employee to the levying officer, the CT Page 5773 employer may be subject to a 52-356b turnover order, and on a finding of contempt may be held liable to the judgment creditor for any amounts which he has failed or refused to pay over."
In each of the three applications, the underlying wage executions were judicially authorized and conform to the content requirements of § 52-361a(b). The employer who appeared by counsel has made no objection to the levy, subsection d; the service and return, subsection e; or the amount subject to levy, subsection f. Two of the three executions involved in this dispute were judicially modified. In Case No. 0232075, New HavenPostal E.F.C.U. v. Theresa O. McMillian, the execution, Plaintiff's Exhibit A, ordered the employer, the City of New Haven, to comply with the court order execution and to withhold the following sum:
 1. Judgment Balance $14,524.66 ---------- 2. Interest through (2-25-93) $ 1,550.41 ---------- 3. Sheriff's Fee at 10% $ 1,607.51 ---------- 4. SUBTOTAL $17,682.58 ---------- 5. Together with ADDITIONAL INTEREST at 10% PER YEAR in accordance with Connecticut General Statutes Sec. 37-3a and 52-356d(e) on the unpaid balance from 2-26-93 until the judgment is paid in full. (IMPORTANT NOTICE TO EMPLOYER — YOU MUST COMPUTE AND WITHHOLD THIS INTEREST)
 6. The Sheriff is due 10% of this additional Interest (as stated in paragraph five (5) above). To be computed by the employer (10% of #5) $ ____________
7. TOTAL $ ____________
THIS EXECUTION IS NOT SATISFIED AND NOT TO BE RELEASED UNTIL ALLSEVEN (7) ITEMS ABOVE ARE PAID.
The defendant Theresa O. McMillian did not request a CT Page 5774 modification of the amount of the execution calculated by the employer to be $13.01 weekly. The City commenced withholding $13.01 weekly from the employer's wages in April of 1993.
In April of 1997, the plaintiff's attorney notified the City's payroll supervisor that the amounts being withheld were inadequate and not in compliance with the statute. The City reviewed the execution and the debtor's earnings and commencing with the first paycheck in May of 1997, withheld an amount in compliance with the requirements of the execution.
In May of 1997, the plaintiff applied for a turnover order asking the court to instruct the employer to turn over the sum of $22,374.37. The court entered an order for a notice requiring the supervisor of payroll for the defendant to appear on July 17, 1997. Service was timely made and the City appeared. Various other pleadings were made by the defendant City together with a memorandum in support of its various objections. In September, at the request of the court, the defendant filed a supplementary memorandum together with a copy of the legislative history of Public Act No. 83-581, now codified as § 52-316a of the General Statutes. Finally, in January of 1998, the defendant filed its final objection to plaintiff's application for a turnover order.
The plaintiff responded to defendant's objections by filing memoranda. After the February 20, 1998 hearing, the plaintiff filed a final memorandum of damages. Plaintiff now claims that the sum under withheld is $6,613.20, not $22,374.37, and asked the court to instruct the defendant employer to turn over from its assets the sum of $6,613.22, plus costs of this action and a reasonable attorney's fee of $450, pursuant to § 52-400c of the General Statutes.
The defendant City's objections to turnover order are many. Defendant asserts it is not liable under the concept of respondent superior for the negligence of its employees, if any, and is not liable for negligent acts which involve the exercise of judgment or discretion, § 52-557n of the General Statutes. The court demurs. Payroll activities are clearly ministerial. The statute, § 52-361a(g), which makes a specific reference to municipalities, must be construed as a legislative waiver of any governmental immunity which the City might have.
Defendant quite correctly argues that before the employer may CT Page 5775 be held liable to a judgment creditor for any amount which it has so far failed or refused to pay over, he must be found in contempt. Whether the defendant will ultimately be found in contempt must be determined at a later date. The immediate problem before the court is whether or not the City has failed to pay over to the creditor the weekly sum ordered by the execution. The court finds that the City did fail to pay over to plaintiff creditor the weekly sum ordered by the execution. This fact is admitted in defendant's memorandum filed September 2, 1997, and the City's summary memorandum, filed February 27, 1998.
Defendant argues that the City should be excused from any responsibility required by the statute because it acted in good faith and corrected the error when apprised of it by the plaintiff. The defendant City points out the difficulty of compliance resulting from the size of the City's payroll and the number of wage executions it receives annually. It notes that this difficulty is costly and makes it arduous to perform its statutory obligations with the exactitude required by the statute. The court finds no legal merit in this argument.
The defendant has also raised various statutes of limitation in defense to this action for a turnover order. Defendant notes specifically § 52-586 of the General Statutes (scire facias); § 52-584 of the General Statutes (negligence); § 52-577
of the General Statutes (tort) as a defense to this statutory action. This argument must fail. Although there is no specific statute of limitations for turnover orders, there is a requirement that a wage execution must be served within one year from its issuance, § 52-361a(e) of the General Statutes. The court concludes that § 52-598 of the General Statutes, which provides that "(a) no execution to enforce a judgment for money damages. . .may be issued after the expiration of twenty years from the date the judgment was entered." is applicable to these turnover actions.
In August of 1997, the defendant City filed an objection to this action based upon the thirteenth amendment to the United States Constitution claiming that since § 52-361a of the General Statutes required services to be performed without compensation, i.e., withholding wage executions and transmitting these sums to a creditor, it violates the prohibition against the involuntary servitude. The defendant has not briefed this argument compelling the court to conclude it has been abandoned.
Certain of the City's arguments against a turnover order sound in CT Page 5776 equity. The City contends that the applicant is estopped and/or is barred by laches. It also asserts that the creditor failed to mitigate its damages by repeated prior acceptance of the incorrect amounts turned over to the sheriff.
In addition, the defendant observes that the plaintiff never served postjudgment interrogatories upon the City to determine the exact amount of the debtor's wages subject to execution.
It is difficult for the court to understand why the creditor delayed for approximately four years before notifying the City of an error that must have been apparent from a reasonable inspection of the sheriff's receipts from the City. The wage execution process is a cumbersome one fraught with the opportunity for calculation errors on the part of both the employer and the creditor. The presence of the sheriff in the middle of the transmittal process doubtless enhances the opportunity for miscommunication between the employer and the creditor. Nevertheless, the statute puts the onus on the employer to calculate the levy initially. For this reason, the court cannot credit the equitable defenses raised by defendant in this turnover procedure.
By way of further argument, the defendant City recognizes that the matter before the court is statutory but contends that it derives from the common law action for scire facias. This theory permits the City to argue that since its position is akin to that of a garnishee stakeholder who derives no pecuniary profit from his position, Vidal Realtors of Westport. Inc. v.Harry Bennett Associates, Inc., 1 Conn. App. 291, 297 (1994), that it should not be responsible for the additional interest on the amounts under withheld. The court finds this argument persuasive. Accordingly, the court orders the parties to appear before it on May 28, 1998 at 2 P.M. for an evidentiary hearing to determine the amount of earnings levied against the employee, Theresa McMillian, which it has so far failed to pay over to the levying officer without regard to any additional interest that may have been computed on this sum in accordance with paragraph 5 of the original execution reproduced as page 4 of this memorandum. Plaintiff's Exhibit A.
At this hearing the court will also hear evidence from the parties on Case No. 235456, Torrington CT Teachers F.C.U. v.Dolores Tucker, with a return to this court on April 3, 1990, wherein plaintiff initially requested a turnover order of CT Page 5777 $7,479.39, but as of February 24, 1998, now requests a turnover order of $5,861.24, together with costs and attorney's fees. The purpose of this hearing is to determine the amount of earnings levied against the employee, Dolores J. Tucker, which the defendant has so far failed to pay over to the levying officer without regard to any additional interest that may have been computed on this sum in accordance with paragraph 5 of the original execution. Plaintiff's Exhibit B.
Likewise, the court will hear evidence from the parties in Case No. 0241727, First Connecticut Credit Union v. KathleenPomeroy, returnable September 1, 1992, wherein the plaintiff originally requested on October 28, 1997, a turnover order of $3,110.05, and now, as of February 24, 1998, requests the court to order the defendant to turn over the sum of $1,620, together with costs and attorney's fees. The purpose of this evidentiary hearing is to determine the amount of earnings levied against the employee, Kathleen Pomeroy, which the defendant has so far failed to pay over to the levying officer without regard to any additional interest that may have been computed on this sum in accordance with paragraph 5 of the original execution.
Dorsey, J. Judge Trial Referee